NATIONSBANK OF GEORGIA, National Association, a national banking association, Plaintiff–Appellant,

v.

CONIFER ASSET MANAGEMENT LTD., a Colorado limited liability company, Defendant–Appellee.

No. 95CA0031.

Colorado Court of Appeals, Div. II.

April 4, 1996.

Rehearing Denied June 6, 1996.

Certiorari Denied Dec. 3, 1996.

Faegre & Benson, Michael S. McCarthy, Christian C. Onsager, John R. Sperber, Denver, for Plaintiff–Appellant.

Doherty, Rumble & Butler, P.C., Garry R. Appel, Denver, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

Plaintiff, NationsBank of Georgia, appeals from a trial court judgment which vacated a decree of foreclosure. The trial court found that plaintiff had waived default on a note by accepting subsequent payments and was, therefore, precluded from foreclosing against defendant, Conifer Asset Management Ltd. We reverse.

Plaintiff is the successor trustee for revenue bonds which were used to finance acquisition and construction of an apartment complex in Adams County. As trustee, plaintiff became holder of a note for $7,425,000 and deed of trust (first note and first deed). The Federal National Mortgage Association (FNMA), holder of the bonds and beneficiary and servicing agent of the first note, obtained a second priority note and deed of trust encumbering the property for approximately $49,000 (second note and second deed).

The first owner of the property absconded with rents and defaulted on the first note in July 1991. Because a default under the first note was also a default under the second note, FNMA notified the owner of a default under both notes and of its intention to accelerate the second note. Also at FNMA's request, the court appointed a receiver, who collected rents and started making the required monthly payments on the first note in September 1991. The second deed was foreclosed in December 1991 and the property redeemed from the foreclosure sale by defendant, a junior lienor.

Thereafter, in March 1992, plaintiff, then a recently named successor trustee on the first note and deed, gave notice to defendant of its intent to accelerate the first note. The trial court granted a foreclosure decree in December 1992. Defendant filed an appeal to this court and, subsequently, moved the trial court for a stay pending appeal. Both the trial court and this court refused to grant a stay without the posting of a supersedeas bond. After failure of defendant to post the bond, the property was sold at foreclosure sale to plaintiff, and defendant failed to redeem.

In February 1994, a division of this court issued an opinion vacating the December 1992 order and remanding for further findings on the defense of waiver and entry of a new order. *See Federal National Mortgage Ass'n v. Conifer Asset Management, Ltd.,* (Colo.App. No. 93CA0160, Feb. 3, 1994) (not selected for official publication) (*Conifer I* ). Plaintiff did not seek certiorari review. While the division was aware that the trial court had authorized a foreclosure sale, neither party notified the division that the sale had occurred or argued that the case was moot.

The parties briefed the issues for a remand hearing, but no new evidence was admitted. In its order on remand of September 1994, the trial court found that plaintiff had waived its right to foreclose by accepting payments after the July 1991 default. Accordingly, the trial court vacated its March 1992 decree of foreclosure and this appeal followed.

I.

Relying on *Mt. Carbon Metropolitan District v. Lake George Co.,* 847 P.2d 254 (Colo.App.1993), plaintiff initially contends that this appeal must be dismissed because the property at issue vested in plaintiff pursuant to § 38–38–501, C.R.S. (1995 Cum. Supp.). Specifically, plaintiff argues, there was no live controversy to be decided either on remand or in this appeal because defendant lost all title, right, or interest in the property when the post-foreclosure sale redemption period expired in August 1993. We decline to dismiss the appeal.

Generally, an appellate court will not render an opinion on the merits of an appeal if issues presented in litigation become moot because of subsequent events. A case is moot when a judgment would have no practical effect upon an existing controversy. *American Drug Store, Inc. v. Denver,* 831 P.2d 465 (Colo.1992).

Here, however, even if, *arguendo*, the case was moot when *Conifer I* was decided, we will not dismiss the appeal on that basis. *See* Mt. Carbon Metropolitan District v. Lake George Co., supra; *see also* § 38–38–501. *But see FCC Construction, Inc. v. Casino Creek Holdings, Ltd.*, 916 P.2d 1196 (Colo. App.1996) (declining to follow *Mt. Carbon Metropolitan District*).

First, when the division rendered its opinion in *Conifer I*, it had not been informed that defendant no longer had an interest in the property. Thus, *Conifer I* properly was decided without regard to the question of mootness. *See Robinson v. California*, 371 U.S. 905, 83 S.Ct. 202, 9 L.Ed.2d 166 (1962) (an appellate court need not vacate its decision if the case is decided before the court learns of an event that mooted the dispute); *see also Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (appellate courts may, on equitable grounds, properly presume that a case is not moot and decide the merits).

Secondly, since *Conifer I* vacated the trial court's original order, a live controversy existed between the parties at the time of the trial court's September 1994 order. And, there is no contention that events have occurred subsequent to September 1994 to render the case moot.

Third, in addition to its failure to alert the *Conifer I* court of the possibility that the case was moot, plaintiff did not raise the issue in a petition for *certiorari* following the *Conifer I* decision. *See Van Schaack Holdings, Ltd. v. Fulenwider*, 798 P.2d 424 (Colo. 1990) (reviewing appellate court decision on mootness issue). And, because the issue of mootness was not raised, a mandate issued in due course in April 1994 and the court of appeals' judgment vacating the trial court's December 1992 order became final.

■ The determination of mootness maintains an element of discretion. *See Humphrey v. Southwestern Development Co.*, 734 P.2d 637 (Colo.1987) (an issue which otherwise may be moot may be addressed if it is capable of repetition, yet evades review, or is a question of great public importance or an allegedly recurring constitutional violation);

*cf. Van Schaack Holdings, Ltd. v. Fulenwider*, *supra* (effect of mootness determination on lower court ruling is equitable question); *In re Marriage of Finer*, 893 P.2d 1381 (Colo.App.1995) (analyzing mootness determinations). To the extent that we may so exercise our discretion, and in consideration of the doctrine of equitable estoppel, *see Oken v. Hammer*, 791 P.2d 9 (Colo.App.1990) (a party may be equitably estopped from asserting mootness), under the particular circumstances here, we decline to invoke the mootness doctrine now and choose to resolve the issues presented.

## II.

■ Alternatively, plaintiff contends that the trial court erred in finding that defendant had established the defense of waiver. Plaintiff asserts that, as a matter of law, waiver cannot be inferred merely from the acceptance of payments from the receiver, acting under the terms of the July 1991 appointment order, because its conduct subsequent to the July 1991 default was not inconsistent with its right to foreclose on the first deed and note. We agree.

■ Waiver is the intentional relinquishment of a known right or privilege. Waiver may be explicit, or it may be implied by a party's conduct if the conduct is unambiguous and clearly manifests an intention not to assert the right or if it is inconsistent with assertion of the right. *Department of Health v. Donahue*, 690 P.2d 243 (Colo.1984). Waiver may be determined as a matter of law only when the material facts are not in dispute, *see Duran v. Housing Authority*, 761 P.2d 180 (Colo.1988); otherwise, waiver is a factual determination for the trial court. *Grimm Construction Co. v. Denver Board of Water Commissioners*, 835 P.2d 599 (Colo. App.1992).

■ Here, there is no contention that plaintiff or FNMA explicitly waived the right to foreclose in their communications after the default. Under certain circumstances, however, the waiver of such right may be inferred from the acceptance of payments without reservation. *See Motlong v. World*

*Savings & Loan Ass'n,* 168 Colo. 540, 452 P.2d 384 (1969); *Colorado Kenworth Corp. v. Whitworth,* 144 Colo. 541, 357 P.2d 626 (1960); *see also Goodwin v. District Court,* 779 P.2d 837 (Colo.1989) (waiver and estoppel cognizable defenses at C.R.C.P. 120 hearing despite undisputed fact that acceptance of the payments alleged to effect waiver left the loan in arrears); *cf. Landy v. Jordan,* 129 Colo. 140, 266 P.2d 1115 (1954).

Relying on such principles, defendant argues that the acceptance of payments from the receiver by FNMA and plaintiff constituted waiver of their right to foreclose. We disagree.

First, FNMA and plaintiff consistently asserted through their actions subsequent to the default that the first note and deed remained subject to acceleration and foreclosure. Specifically, it is undisputed that, in July 1991, FNMA notified the debtor of default under the first and second notes and that the second deed was due and payable based on this default. In its motion for appointment of a receiver in July 1991, FNMA reiterated existence of the default and its intent to commence non-judicial foreclosure on the second deed.

In addition, in objections to defendant's motion to discharge the receiver in February 1992, FNMA reiterated its contention that a default still existed under the first note and deed and requested that the receiver be retained for foreclosure action under the first deed. Finally, in March 1992, plaintiff again notified defendant that the first note was still in default. At that time, plaintiff recognized that the receiver had made payments which were applied to the first note, but asserted that certain unpaid principal, interest, taxes, insurance, late charges, and default interest left the default uncured and were grounds for foreclosure.

Also, although the receiver made seven payments and some eight months elapsed before plaintiff elected to foreclose under the first note, FNMA notified defendant in January 1992—shortly after defendant became owner of the property—of its intent to declare a formal default under the first deed

and commence foreclosure proceedings if defendant did not tender the total amount necessary to cure the first deed and note. *See Malouff v. Midland Federal Savings & Loan Ass'n,* 181 Colo. 294, 509 P.2d 1240 (1973) (when no definite time is specified, reasonable time for exercise of acceleration clause depends on circumstances).

Secondly, defendant's assertion to the contrary notwithstanding, that neither FNMA nor plaintiff specifically reserved the right to foreclose with the acceptance of each payment from the receiver does not require a finding of waiver.

Receipt of payments from a receiver is fundamentally different from receipt from the debtor. In general, a receiver is appointed to secure the rights of both parties to the underlying action. *See People ex rel. Daniels v. District Court,* 33 Colo. 293, 80 P. 908 (1905); *Hart v. Ed-Ley Corp.,* 482 P.2d 421 (Colo.App.1971) (not selected for official publication) (receiver's function is to collect assets, obey court orders, and maintain and protect property and rights of the parties). The court's order of appointment is the measure of a receiver's power. *See Hendrie & Bolthoff Manufacturing Co. v. Parry,* 37 Colo. 359, 86 P. 113 (1906).

If the order of appointment so provides, a receiver can apply rents and profits to the satisfaction of a mortgage debt as well as to the prevention of waste and the preservation of security. *See Moncrieff v. Hare,* 38 Colo. 221, 87 P. 1082 (1906); *Hart v. Ed-Ley Corp. supra.* Furthermore, payments by a receiver can remove the threat of foreclosure and prevent additional interest from accruing when the parties agree that the action can cure the default and forestall foreclosure. *See Zeligman v. Juergens,* 762 P.2d 783 (Colo.App.1988).

A receiver cannot, however, by its acts alone prejudice the rights of, or create an estoppel against, a party. *See Temmer v. Denver Tramway Co.,* 18 F.2d 226 (8th Cir. 1927) (receiver cannot estop any party to the litigation by its acts); *Kansas City Terminal Ry. Co. v. Central Union Trust Co.,* 294 F. 32 (8th Cir.1923) *cert. denied,* 264 U.S. 588, 44 S.Ct. 402, 68 L.Ed. 863 (1924) (absent

decree by court, receiver cannot bind parties by its actions or create situation that effects equitable estoppel); *see also Securities & Exchange Commission v. Lincoln Thrift Ass'n,* 557 F.2d 1274 (9th Cir.1977) (whether receipt of payments from a receiver constitutes waiver depends on the circumstances); R. Clark, *Law & Practice of Receivers* §§ 355(e) and 649(a) (3rd ed. 1959); *cf. American Trust Co. v. Harris,* 88 F.2d 541 (9th Cir.1937) (claims are fixed as of the date of receiver's appointment); *Esch v. Leitheiser,* 117 Ind.App. 338, 69 N.E.2d 760 (1946) (making court-ordered lease payments inconsistent with waiver).

Here, FNMA requested that a receiver be appointed with full management powers, including power to collect all rents, profits and income from the property, and to pay all indebtedness incurred in preserving the property. Furthermore, the trial court specifically authorized the receiver to make principal and interest payments toward reduction of any loans under the first and second deeds. The appointment order also specified that: "[N]othing herein contained shall be construed as interfering with or invalidating any lawful lien or claim by any person or entity." Consequently, the order specifically precluded the receiver's actions, without more, from undermining plaintiff's claim that it had a right to accelerate and foreclose.

Accordingly, under these circumstances, a specific reservation of the right to foreclose with acceptance of each payment would have been superfluous.

Finally, as plaintiff points out, it is not inequitable that, absent other circumstances, a receiver's payments not effect waiver. If the receiver's payments result in a complete cure, a debtor can, by statute, prevent foreclosure without invoking the defense of waiver. *See* § 38–38–104, C.R.S. (1995 Cum. Supp.).

We do not perceive as irreconcilable our determination here and the division's opinion in *Conifer I* or the holding in *Landy v. Jordan, supra.* In *Conifer I,* the division vacated the trial court's December 1992 order and remanded both for additional findings on the affirmative defense of waiver and for a new order. Additional findings were required, according to the opinion, because the trial court's rejection of defendant's waiver defense appeared to be based on a finding of continuous default. The opinion stated that "[the doctrine of continuous default] has been specifically rejected" in *Landy v. Jordan.*

On remand, the trial court found that plaintiff had waived its right to foreclose by accepting payments after the July 1991 default. The court made this finding based on its understanding that, as the law of the case, *Landy v. Jordan* compelled this conclusion. *See People v. Roybal,* 672 P.2d 1003 (Colo. 1983).

The court in *Landy v. Jordan,* however, did not reject the concept of "continuous default" as a matter of law, but simply determined on equitable grounds that, under the particular circumstances there at issue, there was no delinquency in payments. While the division noted similarities between the two cases, *Landy v. Jordan* did not address the crucial issue here—whether mere acceptance of payments from a receiver can constitute waiver—and is not, therefore, dispositive as to the issue of waiver. Consequently, neither *Conifer I* nor *Landy v. Jordan* compels a finding of waiver here.

The judgment of the trial court is reversed, and hence, the judgment of December 21, 1992, and rulings premised on that judgment are in full force and effect.

HUME, J., concurs.

QUINN\*, J., specially concurs.

Justice QUINN specially concurring.

I specially concur in the result. In contrast to the majority, I find considerable tension between this division's opinion and the unpublished opinion in *Federal National Mortgage Ass'n v. Conifer Asset Management, Ltd.,* (Colo.App. No. 94CA0160, Feb. 3, 1994) (not selected for official publication)

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1995 Cum.Supp.).

(Conifer I), which involved the initial appeal of this case.

In *Conifer I,* the court vacated the foreclosure decree and remanded the case to the trial court for additional findings on the affirmative defense of waiver. I read *Conifer I* to say that an issue of fact existed on the issue of waiver and, hence, additional findings on that issue were required on remand. I read this court's present opinion to say that the evidence was insufficient as a matter of law to support defendant's affirmative defense that FNMA waived its right to foreclose on the first deed of trust. I agree with this court's resolution of that issue.

As a result of the order of remand in *Conifer I,* the trial court was placed in the unfortunate position of being required to make additional findings on an issue that should have been resolved in the first appeal as a matter of law. In my view, this case should never have been remanded to the trial court in the first instance because, as this court holds, the evidence at trial was legally insufficient to support the affirmative defense of waiver. I accordingly specially concur in the result.